UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL G. PITTMAN,

       Plaintiff,                       CIVIL ACTION NO. 11-15115

     v.                                 DISTRICT JUDGE AVERN COHN

COMMISSIONER OF            MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Paul G. Pittman ("Plaintiff") brings this action, pursuant to 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's ("Commissioner") final denial of his application for benefits. Both parties filed summary judgment motions (Dkts. 9 & 11), which are presently before this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff also filed a reply brief (Dkt. 13).

**I. RECOMMENDATION**

For the reasons set forth below, this case should be remanded to the Commissioner for consideration of new and material evidence. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART**, that Defendant's Motion for Summary Judgment be **DENIED**, and that, pursuant to sentence six of 42 U.S.C. § 405(g), this matter be **REMANDED** for consideration of the new evidence attached to Plaintiff's motion for summary judgment.

**II. REPORT**

A.  *Administrative Proceedings*

Plaintiff applied for benefits on August 17, 2009 alleging that he became unable to work on January 1, 2008 (Tr. 11). The application was initially denied by the Commissioner on May 26, 2010 (Tr. 11). Plaintiff requested a hearing and, on March 16, 2011, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Anthony R. Smereka, who considered the case *de novo*. In a decision dated May 19, 2011, the ALJ found that Plaintiff was not disabled (Tr. 11-23). Plaintiff requested a review of this decision; on September 20, 2011, the ALJ's decision became the final decision of the Commissioner, when the Appeals Council denied Plaintiff's request for further review (Tr. 1-6).

B.  *ALJ Findings*

Plaintiff was 26 years old on the date of the hearing (Tr. 39). Plaintiff previously worked as a mechanic (Tr. 14). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 1, 2008, his alleged disability onset date (Tr. 13).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: hearing loss, right more than left; bouts of tinnitus[1]; dizzy spells/possible Ménière's disease[2]; attention deficit-hyperactivity disorder ("ADHD"); and bipolar disorder (Tr. 14).

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations. *Id.*

---

[1] Tinnitus is a noise in the ears, such as ringing, buzzing, roaring or clicking. *See* Dorland's Illustrated Medical Dictionary, 1956 (31st Ed. 2007).

[2] Ménière's disease is hearing loss, tinnitus and vertigo resulting from nonsuppurative disease of the labyrinth with edema. *See* Dorland's Illustrated Medical Dictionary, 546 (31st Ed. 2007).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> [A] full range of work at all exertional levels but with the following non-exertional limitations: no work at unprotected heights, including any climbing of ladders, ropes or scaffolds; no driving; no work around dangerous moving machinery; no exposure to very loud work environments, and a restriction to unskilled work (Tr. 16).

At step four, the ALJ found that Plaintiff could not perform his previous work as a mechanic (Tr. 21).

At step five, the ALJ denied Plaintiff benefits, finding that Plaintiff could perform a significant number of jobs available in the national economy, such as unskilled kitchen helper (23,000 jobs in southeast Michigan; 43,000 in Michigan) or office cleaner (11,000 jobs in southeast Michigan; 22,000 jobs in Michigan) (Tr. 22).

### C. *Medical Evidence*

Plaintiff is completely deaf in his right ear and suffers from moderate to mild hearing loss in his left ear (Tr. 351). On October 11, 2006, an audiologist completed a "hearing aid check" report and indicated that Plaintiff had profound hearing loss in his right ear, and that he was experiencing tinnitus (ringing) in his left ear, which created difficulty in adjusting his hearing aids (Tr. 285). This report indicates that Plaintiff "may have Ménière's disease" (Tr. 285).

In May 2010, Dr. Frederick Lopatin, an otolaryngologist (ear, nose, and throat specialist), evaluated Plaintiff for the state DDS and performed a hearing test (Tr. 342-45). Plaintiff complained of complete hearing loss in his right ear since birth and hearing down to about fifty or sixty percent in the left ear (Tr. 343). Plaintiff reported "ringing in ears or head noise," dizziness and recurrent middle ear infections (Tr. 343). Dr. Lopatin noted that an audiogram showed that Plaintiff had profound sensorineural hearing loss in his right ear and mild

to moderate sensorineural hearing loss in the left (Tr. 344). Dr. Lopatin diagnosed asymmetrical sensorineural hearing loss and opined that Plaintiff would benefit from hearing aids (Tr. 345). He further opined that, with hearing aids, Plaintiff should be able to function fairly well in a normal verbal work environment (Tr. 345).

Plaintiff underwent an audiologic examination in February 2011, with complaints of ringing in his ear for one month and dizziness and lightheadedness on head turning (Tr. 352). The audiologist noted that Plaintiff had profound right ear hearing loss since birth and that he used a hearing aid in the left ear, in which he had fluctuating hearing (Tr. 352). The audiologist found profound hearing loss in the right ear and moderate rising to mild sensorineural hearing loss in the left ear with a significant low frequency decrease (Tr. 352). The audiologist recommended that Plaintiff see his ENT doctor as scheduled and have a hearing aid check for reprogramming (Tr. 352).

Plaintiff attached new medical evidence to his motion for summary judgment (Dkt. 9; Exs. 1-3). In an Affidavit, Plaintiff explained that – while he had health insurance coverage – his insurance company would not approve specialized medical care or testing, unless Plaintiff received a request for such testing from his ENT doctor, as part of a "treatment plan" (*Id.*; Ex. 4 ¶¶ 5-6). Plaintiff further states that he was unable to get an appointment with his ENT doctor (Dr. Seidman) until August 2011, due to Dr. Seidman's schedule. Plaintiff's insurance company approved his request for specialized testing in October 2011, and the testing was conducted in November and December 2011 (*Id.*; Ex. 4 ¶ 8-9).

The new records indicate that, in October 2011, Plaintiff presented to Dr. Seidman with complaints of dizziness, ringing in his ears and hearing loss (*Id.*, Ex. 1 at 1). Plaintiff stated that in the last year, he had issues with dizzy spells, ringing in his ears, and fluctuating hearing (*Id.*,

-4-

Ex. 1 at 1). He reported three occasions where he had to pull over while driving due to dizzy spells (*Id.*, Ex. 1 at 1). Plaintiff stated that he was taking Vertigoheel (a homeopathic remedy for dizziness), and was doing well, but in the past week he had dizzy spells for two consecutive days (*Id.*, Ex. 1 at 1). He reported that he used to get dizzy spells every two weeks, but recently began experiencing them at least once a week (*Id.*, Ex. 1 at 1). Dr. Seidman diagnosed Plaintiff with profound right-ear hearing loss and left endolymphatic hydrops (Ménière's Disease; or excessive fluid in the inner ear organ effecting balance) with fluctuating hearing loss and dizziness (*Id.*, Ex. 1 at 1). Dr. Seidman explained that Vertigoheel would typically be used three times a day, rather than once per day, and discussed further treatment options, including full balance function testing (*Id.*, Ex. 1 at 1-2).

Plaintiff underwent balance function testing on November 28, 2011, and stated that he began experiencing periodic dizzy spells and a decrease in left ear hearing in January 2011 (*Id.*, Ex. 2 at 1). The test results were consistent with "bilateral peripheral vestibular hypofunction[3]," greater on the right (*Id.*, Ex. 2 at 1). It was recommended that Plaintiff have vestibular rehabilitation (*Id.*, Ex. 2 at 1). Electrocochleography testing[4], performed on December 9, 2011, was consistent with endolymphatic hydrops (*i.e.*, Ménière's disease) (*Id.*, Ex. 3 at 1).

### D.     *Plaintiff's Claims of Error*

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the ALJ erred in refusing to grant his request for a consultative examination. Specifically, Plaintiff argues that the

---

[3]  In other words, damage to the inner ear balance system.

[4] Electrococheography is a measurement of electrical potentials in response to acoustic stimuli measured by an electrode in the external acoustic canal, or the tympanic membrane, or through the tympanic membrane applied to the promontory or the round window. *See* Dorland's Illustrated Medical Dictionary, 607 (31st Ed. 2007).

ALJ should have ordered caloric stimulation or other vestibular tests to confirm Plaintiff's possible diagnosis of Ménière's disease. Plaintiff claims that these additional tests could have shown that Plaintiff met or medically equaled Listing 2.07 (Disturbance of labyrinthine-vestibular function).

Second, Plaintiff argues that the matter should be remanded, pursuant to sentence six of 42 U.S.C. § 405(g), to consider new and material evidence, specifically, Dr. Seidman's notes dated November 2, 2011 (Dkt. 9; Ex. 1), the results of balance function testing conducted on November 28, 2011 (Dkt. 9; Ex. 2) and the results of electrocochleography testing conducted on December 9, 2011 (Dkt. 9; Ex. 3), which confirmed a diagnosis of Ménière's disease.

### III. DISCUSSION

#### A. *Framework for Disability Determinations*

Under the Social Security Act (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

>   Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>   Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>   Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

>   B.   *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

  **C.**  *Analysis*

As noted earlier, Plaintiff raises two arguments on appeal, each is considered below:

  **1. The ALJ Did Not Err In Refusing To Order A Consultative Exam**

An ALJ has the discretion to determine whether further evidence, such as additional examinations are necessary. *See Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir. 2009), citing 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests"). "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). In other words, the regulations "do[ ] not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (internal quotation marks omitted) (emphasis in original). *See also, Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("[a]n ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination").

Here, the record reflects audiological testing and a referral to a state agency otolaryngologist (*i.e.*, an ear, nose and throat specialist, Dr. Lopatin) for a consultative examination. Simply put, the record contained sufficient evidence for the ALJ to conduct a disability determination, and the ALJ did not abuse his discretion by not ordering specialized testing.

### 2. This Matter Should Be Remanded Pursuant To Sentence Six

Plaintiff next argues that this matter should be remanded to consider new and material evidence, pursuant to sentence six of 42 U.S.C. § 405(g). That sentence provides: "The court ... may at any time order additional evidence to be taken before the Commissioner of Social

Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). As its text indicates, a sentence six remand is only appropriate where a plaintiff can demonstrate that evidence not before the ALJ is "new" and "material," and that there was "good cause" for not producing the evidence earlier. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

Evidence is "new" only if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)). Further, "new" evidence must not be merely cumulative of evidence already part of the record. *Wilson v. Comm'r of Soc. Sec.*, No. 10–13828, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011); *see also Carroll v. Califano*, 619 F.2d 1157, 1161 (6th Cir.1980) ("[W]here the issue in question has already been fully considered, further evidence on that point is merely cumulative").

New evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision") (citing *Sizemore*, 865 F.2d at 711)). A corollary to this requirement is that "material" evidence must be "probative of the claimant's condition for the time period for which benefits were denied." *Wilson*, 2011 WL 2607098, at *6; *see also Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir.

1992) ("Evidence of a subsequent deterioration or change in condition after the administrative hearing is ... immaterial").

A claimant shows "good cause" by providing a reasonable justification for failing to acquire and present the new and material evidence to the ALJ. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (1984) (per curiam). Good cause "contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, No. 5:07CV 188, 2009 WL 700057, at *6 (W.D.Ky. Mar.13, 2009) (internal citations omitted).

The Court believes this case should be remanded pursuant to sentence six for the ALJ to consider these records. As an initial matter, it is plain that Plaintiff's evidence satisfies two of the three sentence-six remand requirements. First, the records from November and December 2011 are "new" because none of these records were in existence at the time the ALJ rendered his decision – on May 19, 2011.

Plaintiff also meets the "good cause" requirement because, as he explained in his Affidavit, Plaintiff's insurance company would not approve specialized testing without a specific treatment plan from his ENT doctor. This does not appear to be a case of sandbagging or strategic delay. *Cf. Koulizos v. Sec'y of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug.19, 1986) ("'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'"). Rather, given the nature of the records (specialized testing, which Plaintiff's health insurance company was reluctant to approve) and the timing of

their creation (after the ALJ's decision) Plaintiff has "good cause" for not producing the records to the ALJ.

The "materiality" requirement presents a closer call. In this regard, Plaintiff's evidence must clear two hurdles: (1) the evidence must be probative of the time period in question and not simply evidence of a deteriorating condition, and (2) the evidence must have a reasonable probability of leading the ALJ to a different outcome. Plaintiff argues that the additional records establish that he meets, or medically equals, Listing 2.07, which reads:

> **Disturbance of labyrinthine-vestibular function** (Including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
> A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
>
> B. Hearing loss established by audiometry.

The new evidence confirms Plaintiff's diagnosis of Ménière's disease.[5] However, Defendant argues that this definitive diagnosis is of no import, since the ALJ found that the evidence did not establish "a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing," as required in the preamble of Listing 2.07. But, Dr. Seidman's November 2, 2011 report (Dkt. 9; Ex. 1) states that Plaintiff did indeed suffer from frequent dizziness, ringing (tinnitus) and hearing loss. Plaintiff himself concedes that he did not start to experience dizzy spells until January 2011 (two months before the hearing) (Dkt. 13 at 2) thus, according to Plaintiff it is not surprising that his older medical records fail to mention these symptoms. In any event, the new records from Dr. Seidman – in conjunction with the evidence already in the record

---

[5] The ALJ only concluded that Plaintiff had "possible Ménière's disease" (Tr. 14).

– might convince the ALJ that Plaintiff does indeed meet or medically equal Listing 2.07, from January 2011 onward.

In sum, a sentence-six remand is appropriate in this case, because the evidence attached to Plaintiff's motion for summary judgment is "new" and "material," and Plaintiff had "good cause" for not producing the evidence earlier. *See Foster*, 279 F.3d at 357.

### III.  CONCLUSION

For the foregoing reasons, this Magistrate Judge finds that Plaintiff has shown good cause for producing new evidence which is material to the disability determination. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART**, that Defendant's Motion for Summary Judgment be **DENIED**, and that, pursuant to sentence six of 42 U.S.C. § 405(g), the decision of the Commissioner be **REMANDED** to consider the newly produced evidence.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does

not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

                                            s/Mark A. Randon
                                            Mark A. Randon
                                            United States Magistrate Judge

Dated: December 14, 2012

*Certificate of Service*

    *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 14, 2012, by electronic and/or ordinary mail.*

                                            *s/Melody Miles*
                                            *Case Manager*